IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-HC-2279-FL

WINSOR DEVONE INGRAM,      )
                              )
       Petitioner,        )
                              )
     v.               )           ORDER
                              )
DENNIS DANIELS,        )
                              )
       Respondent.     )

The matter comes before the court on respondent's motion for summary judgment (DE 7) and motion to dismiss (DE 11). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants respondent's motions.

## STATEMENT OF CASE

On November 18, 2011, petitioner was convicted, following a jury trial[1] in Wayne County Superior Court, of first degree murder. See State v. Ingram, 227 N.C. App. 383, 741 S.E.2d 906, (2013). Petitioner was tried non-capitally, and the jury was not given the option of imposing a death sentence. The superior court sentenced petitioner to life imprisonment without the possibility of parole. Id. Petitioner appealed, and, on July 15, 2014, the North Carolina Court of Appeals found no error in petitioner's conviction or sentence. Id. The North Carolina Supreme Court denied petitioner's counseled petition for discretionary review ("PDR") on September 3, 2013. (Resp't Ex.

---

[1] This was petitioner's second trial. His first trial ended in a mistrial when the jury could not reach a unanimous verdict. Ingram, 227 N.C. App. at 384, 741 S.E.2d at 908 .

3 (DE 9-3). Petitioner was represented at trial by Mr. Charles R. Gurley and on appeal by Mr. M. Gordon Widenhouse, Jr.

On October 16, 2014, petitioner filed a *pro se* motion for appropriate relief ("MAR") in Wayne County Superior Court. (Resp't Ex. 10 (DE 9-10)). The superior court denied petitioner's MAR on May 6, 2015. (Resp't Ex. 11 (DE 9-11)). On August 5, 2015, petitioner filed a *pro se* petition for a writ of certiorari in the North Carolina Court of Appeals, which was denied on August 21, 2015. (Resp't Ex. 14 (DE 9-14)). On August 31, 2015, petitioner filed a *pro se* petition for a writ of certiorari in the North Carolina Supreme Court, which was denied on November 5, 2015. (Resp't. Ex. 17 (DE 9-17)).

On November 19, 2015,[2] petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting the following grounds for relief: (1) the trial court improperly denied his motion to dismiss; (2) the trial court erred in declining to instruct the jury on the lesser included offense of second-degree murder; (3) prosecutorial misconduct; (4) ineffective assistance of trial counsel; and (5) ineffective assistance of appellate counsel.

On June 29, 2016, respondent filed both a motion for summary judgment, arguing that petitioner is not entitled to relief on the merits of his claims and a motion to dismiss on the grounds that petitioner's habeas petition was filed outside of the statute of limitations, and therefore is time-barred. The motions were fully briefed. On June 30, 2016, the clerk of court issued a Rule 56 letter in compliance with Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975). Petitioner responded

---

[2] Providing petitioner the benefit of the mailbox rule, the court deems his petition, dated November 19, 2015, but filed on November 23, 2015, to be filed on November 19, 2015. See Houston v. Lack, 487 U.S. 266, 276 (1988) (holding that a *pro se* prisoner's notice of appeal is filed at the moment it is delivered to prison authorities for mailing to the district court).

to the motions. As part of his response, petitioner filed an appendix consisting of the following exhibits: (1) citations to the trial transcript and other excerpts from the trial record; (2) his MAR; (3) a letter of investigation for North Carolina Prisoner Legal Services ("NCPLS"); and (4) his own affidavit, which was prepared for him by a NCPLS attorney prior to completing her investigation.

## STATEMENT OF THE FACTS

The facts as summarized by the North Carolina Court of Appeals are as follows:

On the afternoon of 10 September 2007, T.K., then ten years old, returned home from school. She observed her cousin, Tamorris Raynor (Raynor), emerging from the home. A man in a white t-shirt, whom T.K. had seen before, exited a gray automobile and spoke with Raynor. The man and Raynor went behind the house. After the man met with Raynor, he departed in his vehicle, parked it around the corner by a funeral home, and returned to the property via a concealed, wooded path.

When T.K. returned, she heard gunfire and saw Raynor come around the house. The other man came around the house and shot Raynor. T.K. gave a statement to the police. She identified the photograph of Windsor Ingram (defendant) from a photographic lineup as the man who shot Raynor.

Ernest Raynor (Ernest), Raynor's uncle, ran outside after hearing shots and found Raynor on the ground. He saw a man flee down a path and get into a gray Lincoln LS automobile. Ernest described the man as being 5'8" or 5'9", wearing a white t-shirt, white cap, and jeans.

Telephone records revealed that Raynor had used Ernest's telephone to call two different phone numbers that day, one of which was that of defendant's cellphone.

Defendant was charged with first-degree murder based on premeditation and deliberation. His first trial ended in a mistrial when the jury could not reach a unanimous verdict. The case was tried a second time before a jury at the 14 November 2011 Criminal Session of the Superior Court for Wayne County. The jury found defendant guilty of first-degree murder. The trial court sentenced defendant to life imprisonment without the possibility of parole.

State v. Ingram, 227 N.C. App. 383, 384, 741 S.E.2d 906, 908 (2013).

3

# DISCUSSION

A.    Summary Judgment and Motion to Dismiss

1.    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556.

4

Furthermore, the complaint need not set forth "detailed factual allegations," but instead must simply "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679). In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Id. at 255 (citations omitted).

When considering a Rule 12(b)(6) motion, a court must keep in mind the principle that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); Noble v. Barnett, 24 F.3d 582, 587 n.6 (4th Cir. 1994). Nevertheless, Erickson does not undermine the requirement that a pleading contain "more than labels and conclusions." Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Twombly, 550 U.S. at 555). Furthermore, while a *pro se* complaint must be construed liberally, it is not the court's obligation "to discern the unexpressed intent of the plaintiff." Laber v. Harvey, 438 F.3d 404, 413 n. 3 (4th Cir. 2006).

 2. Analysis

  a. Statute of Limitations

The court first addresses whether petitioner's § 2254 action is time-barred. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus by a

person in custody pursuant to the judgment of a state court must be filed within one year. 28 U.S.C.

§ 2244(d)(1). The period begins to run from the latest of several dates:

> A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; B) the date on which the impediment to filing an application . . . is removed . . .; C) the date on which the constitutional right was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

The running of the "period of limitation" under § 2244(d)(1) is tolled during the time "a

properly filed application for State post-conviction or other collateral review with respect to the

pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); see Taylor v. Lee, 186 F.3d 557,

561 (4th Cir. 1999). An application for post-conviction or other collateral review is pending from

initial filing until final disposition by the state court. See Taylor, 186 F.3d at 561.

The statutory period began to run in this case on the date petitioner's judgment became final.

Petitioner's conviction became final on December 2, 2013, 90 days after the North Carolina

Supreme Court denied his PDR. See Sup. Ct. R. 13.1 (providing 90 days in which to file a certiorari

petition with the United States Supreme Court from a final order of a state's highest court denying

review); Clay v. United States, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court affirms

a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the

time for filing a certiorari petition expires.").

Petitioner's one-year statutory period then began to run on December 2, 2013 and ran for 318

days until petitioner filed his MAR on October 16, 2014 . The one-year statute of limitations period

then was tolled from October 16, 2014, until the court of appeals denied petitioner's certiorari petition on August 21, 2015. See N.C. Gen. Stat. § 7a-28(a) ("Decisions of the Court of Appeals upon review of [MARs alleging federal constitutional violations] are final and not subject to further review in the Supreme Court by appeal, motion, certification, writ, or otherwise."); N.C.R. App. P. 21(e) (providing that certiorari petitions seeking review of MARs in non-capital cases "shall be filed with the Court of Appeals and the Supreme Court will not entertain petitions for certiorari or petitions for further discretionary review in these cases"). Petitioner's statutory period subsequently resumed on August 21, 2015, and expired 47 days later on October 7, 2015. Because petitioner did not file his habeas petition in this court until November 19, 2015, his action is time-barred.

As a defense to the running of the statute of limitations, petitioner contends that he is entitled to equitable tolling. Even though the purpose of the AEDPA is to "reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism," the Fourth Circuit has held that "the AEDPA statute of limitations is subject to equitable tolling." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc). Nonetheless, the Fourth Circuit has noted the rarity in which equitable tolling applies. "Any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. . . . Principles of equitable tolling do not extend to garden variety claims of excusable neglect." Id. at 246 (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). Rather, equitable tolling only is "appropriate when . . . extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit." Id. (citation and quotations omitted).

Here, petitioner contends that a North Carolina Prisoner Legal Services ("NCPLS") reviewed his claims from November 2013 until October 2014. (Pet. 13). NCPLS declined to represent petitioner, and notified him that his deadline to file a § 2254 petition was November 25, 2014. (Id.). As noted above, petitioner then filed a MAR on October 16, 2014, which was denied on May 6, 2015. (Id.). Petitioner contends that he did not receive the order denying his MAR until July 20, 2015, and he claims the running of the statute of limitations period should be tolled because he has "no control over the legal mail process." (Id.). Petitioner is not entitled to equitable tolling on these facts. See Brunson v. Solomon, No. 5:14-HC-2009-FL, 2015 WL 331496, at *5 (E.D.N.C. Jan. 26, 2015) ("To the extent petitioner asserts that NCPLS interfered with the timely filing of his § 2254 petition, ineffective assistance of counsel generally does not warrant equitable tolling"), appeal dismissed, 606 F. App'x 86 (4th Cir. 2015), cert. denied sub nom. Brunson v. Taylor, 136 S. Ct. 421, 193 L. Ed. 2d 330 (2015), reh'g denied, 136 S. Ct. 926, 193 L. Ed. 2d 811 (2016); Banuelos-Acosta v. Keller, No. 1:11CV953, 2013 WL 1320506, at *5 (M.D.N.C. Mar. 29, 2013) ("[E]ven if Petitioner did not actually receive a copy of the trial court's order, to qualify for equitable tolling, he must still exercise due diligence to determine the status of his MAR.") (citing Woodward v. Williams, 263 F.3d 1135, 1143 (10th Cir. 2001)). Here, as in Brunson, petitioner "does not provide any evidence to suggest that NCPLS mislead him with respect to any particular deadline, misrepresented that it actually filed any motion or petition on his behalf, or that it in fact would provide petitioner representation." Brunson, No. 5:14-HC-2009-FL, 2015 WL 331496, at *5. NCPLS correctly informed petitioner of the deadline for filing a habeas petition, and "[t]here is no indication that petitioner was prevented from taking such action at an earlier date, nor does petitioner identify any obstacle which prevented him from filing a timely § 2254 petition." Id.

8

Although petitioner does not specifically argue that his action is not time-barred because he is actually innocent of his conviction for first degree murder, he does assert that he has "claims with great merit that would grant me my freedom." (Pet. 13). The Supreme Court recognized in McQuiggin v. Perkins, ⸺ U.S. ⸺, ⸺, 133 S.Ct. 1924, 1928 (2013), an actual innocence exception to AEDPA's time limitations. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 327 (1995); see McQuiggin, ⸺ U.S. at ⸺, 133 S.Ct. at 1935. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324. Further, "claims of actual innocence are rarely successful," Schlup, 513 U.S. at 324, and "should not be granted casually." Wilson v. Greene, 155 F.3d 396, 404 (4th Cir. 1998).

Petitioner has not set forth any new or reliable evidence establishing his actual innocence or any justifiable explanation for his delay in raising his actual innocence claim. Petitioner's own self-serving and belated protests of innocence are not sufficient to satisfy the standard set forth in McQuiggin. See McQuiggin, 133 S.Ct. at 1935 ("Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing" that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."); see also McDowell v. Lemke, 737 F.3d 476, 483–84 (7th Cir. 2013) (stating that "eleventh hour" self-serving affidavits containing no indicia of reliability and which are accompanied by no reasonable explanation for the delay are inherently suspect with respect to a

9

petitioner's efforts to overcome procedural default). For reasons discussed in more detail below, petitioner's argument that there was insufficient evidence to convict him fails. Petitioner's conclusory allegations are insufficient to toll the limitations period. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("Unsupported, conclusory allegations do not entitle habeas petitioner to an evidentiary hearing."), overruled on other grounds by, Gray v. Netherland, 518 U.S. 152, 165-66 (1996); see, e.g., Turner v. Director, Virginia Dept. of Corrections, No. 1:13cv998, 2013 WL 6506179, at *3 (E.D. Va. Dec. 6, 2013) ("Here, petitioner's conclusory arguments that new evidence of some ill-defined "fraud" by the Commonwealth undermines the validity of his convictions,[] falls far short of meeting this exacting standard. Therefore, petitioner's reliance on McQuiggin to overcome the untimeliness of this petition is unavailing."), appeal dismissed, 591 F. App'x 217 (4th Cir. 2015). Based upon the foregoing, petitioner's actual innocence claim does not excuse the untimely filing of this § 2254 petition. Accordingly, respondent's motion to dismiss petitioner's claims as time barred is GRANTED.

Nonetheless, out of an abundance of caution the court will address alternatively petitioner's individual claims.

b. Procedural Default

The MAR court dismissed petitioner's third and fourth grounds for relief on the ground that they were procedurally barred because petitioner did not raise these arguments in his direct appeal. (Resp't. Ex. 11 (DE 9-11)).

A prisoner must exhaust the remedies available to him in state court before he files a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1)(A). Section 2254's exhaustion requirement demands that state prisoners give "the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). This "one full opportunity" includes filing petitions for discretionary review with the state supreme court when that review is part of the ordinary appellate procedure in the state. See id. In North Carolina, a petitioner may satisfy the exhaustion requirement of § 2254 by directly appealing his conviction to the North Carolina Court of Appeals and then petitioning the Supreme Court of North Carolina for discretionary review, or by filing a MAR and petitioning the North Carolina Court of Appeals for a writ of certiorari. See N.C. Gen. Stat. §§ 7A-31, 15A-1422.

Petitioner did not raise his third and fourth grounds for relief claim at issue on direct appeal. The MAR court subsequently specifically ruled that petitioner "was in a position to adequately raise grounds and issues underlying the present motion and is therefore procedurally barred pursuant to N.C.G.S. § 15A-1419." (Resp't's Ex. 11 (DE 9-11) at 1). Section 15A–1419 is an independent and adequate state procedural bar, precluding federal habeas review. See Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008). Petitioner has not demonstrated cause or prejudice or a fundamental miscarriage of justice to overcome the procedural default. See Wright v. Angelone, 151 F.3d 151, 160 (4th Cir. 1998) (finding that a habeas court will not review a claim that is procedurally defaulted absent a showing of cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will occur if the habeas court declines to review the claim). Because petitioner failed to preserve his claims under North Carolina law, they are procedurally barred. See, e.g., Woodford v. Ngo, 548 U.S. 81, 92 (2006); Coleman v. Thompson, 501 U.S. 722, 750 (1991). Therefore, petitioner's procedural default bars habeas review of these claims. Accordingly, respondent's motion

11

for summary judgment is GRANTED as to petitioner's third and fourth grounds for relief. In the alternative, these claims are dismissed on the merits, as discussed below.

      c.     Substantial Evidence

In his first ground for relief, petitioner argues that the trial court improperly denied his motion to dismiss, in which he argued that there was insufficient evidence to convict him of first degree murder.[3] (Pet. 14-15). The North Carolina Court of Appeals denied this claim on the merits, reasoning:

## II. Denial of Motion to Dismiss

In his first argument, defendant contends that the trial court erred in denying his motion to dismiss the charge of first-degree murder. We disagree.

### A. Standard of Review

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." State v. Smith, 186 N.C.App. 57, 62, 650 S.E.2d 29, 33 (2007).

"'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.'" State v. Fritsch, 351 N.C. 373, 378, 526 S.E.2d 451, 455, cert. denied, 531 U.S. 890, 121 S.Ct. 213, 148 L.Ed.2d 150 (2000) (quoting State v. Barnes, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions

---

[3] In his motion to dismiss, petitioner also argued that the trial court erred in declining to instruct the jury on the lesser included offense of second-degree murder. Ingram, 227 N.C. App. at 386, 741 S.E.2d at 909. Petitioner raises that claim independently in his second ground for relief in the instant petition.

in its favor." State v. Rose, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), cert. denied, 515 U.S. 1135, 115 S.Ct. 2565, 132 L.Ed.2d 818 (1995).

## B. Analysis

In the instant case, the issue presented to the trial court upon defendant's motion to dismiss was whether there was substantial evidence that it was defendant who shot and killed Raynor. Defendant contends that the State's evidence that defendant was the shooter was unreliable.

T.K. testified that defendant shot Raynor. T.K. identified defendant from a photographic line-up. Defendant's contention that this identification was questionable goes to the credibility of the evidence, not its sufficiency for purposes of withstanding a motion to dismiss. The credibility of witnesses is not for this Court to determine. State v. Buckom, 126 N.C.App. 368, 375, 485 S.E.2d 319, 323 (1997) (quoting State v. Hanes, 268 N.C. 335, 339, 150 S.E.2d 489, 492 (1966)).

Defendant also contends that the State's evidence of motive was insufficient. However, "[m]otive is not an element of first-degree murder, nor is its absence a defense[.]" State v. Carver, — N.C.App. —, —, 725 S.E.2d 902, 905 (2012) aff'd, 366 N.C. 372, 736 S.E.2d 172 (2013) (quoting State v. Elliott, 344 N.C. 242, 273, 475 S.E.2d 202, 216 (1996), cert. denied, 520 U.S. 1106, 117 S.Ct. 1111, 137 L.Ed.2d 312 (1997)). The State had no burden to show that defendant had a motive; it merely had to show that defendant unlawfully killed Raynor with premeditation and deliberation. We note further that the trial court correctly instructed the jury:

> Proof of motive for the crime is permissible and often valuable, but never essential for conviction. If you are convinced beyond a reasonable doubt that the Defendant committed the crime, the presence or absence of motive is immaterial. Motive may be shown by facts surrounding the act if they support a reasonable inference of motive. When thus proved, motive becomes a circumstance to be considered by you. The absence of motive is equally a circumstance to be considered on the side of innocence.

This argument is without merit.

Ingram, 227 N.C. App. at 384-86, 741 S.E.2d at 908-09.

Although claims of insufficient evidence are cognizable on collateral review, a federal court's review of such a claim is "sharply limited." Wright v. West, 505 U.S. 277, 296 (1992). The standard of review for a claim of insufficient evidence on habeas corpus review is whether, after

viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Id. at 284; Jackson v. Virginia, 443 U.S. 307, 319 (1979).

The determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). Petitioner has not met his burden. Petitioner had the opportunity to cross-examine T.K. with regard to the unreliability of her identification. (Resp't Ex.18 (DE 9-18) at 72-79). The jury then considered the evidence presented and made credibility decisions with respect to the State's witnesses, to which this court must defer. See Wensell v. McBride, No. 3:06–CV–4, 2007 WL 2220603, * 10, n. 9 (N.D.W. Va. July 27, 2007) (noting that federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and in weighing evidence), appeal dismissed, 2008 WL 539897 (4th Cir. 2008). Thus, petitioner has not demonstrated that the court of appeals' adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Accordingly, respondent's motion for summary judgment is GRANTED as to this claim.

d. Jury Instructions

In his second ground for relief, petitioner contends that the trial court erred in declining to instruct the jury on the lesser included offense of second-degree murder. (Pet. 16). The North Carolina Court of Appeals denied this claim on the merits, reasoning as follows:

III. Instruction on Lesser Included Offense

14

In his second argument, defendant contends that the trial court erred in declining to instruct the jury on the lesser included offense of second-degree murder. We disagree.

## A. Standard of Review

"[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed de novo by this Court." State v. Osorio, 196 N.C.App. 458, 466, 675 S.E.2d 144, 149 (2009).

"An instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater." State v. Millsaps, 356 N.C. 556, 561, 572 S.E.2d 767, 771 (2002).

## B. Analysis

The jury was instructed on the charge of first-degree murder based upon premeditation and deliberation. During the jury charge conference, the following discussion took place:

THE COURT: Addressing the proposed verdict sheet, my ah ... I would suggest the verdict be guilty of first degree murder or not guilty.

MR. GURLEY: Yes, sir.

MS. BEDFORD: Yes, sir.

THE COURT: Does anyone want to be heard or request any other verdict?

MR. GURLEY: Um ... your Honor, I ... I–I guess the Court could consider a lesser included, but again, it's up to the Court.

THE COURT: State?

MS. BEDFORD: Your Honor, the State has considered that ... it is possible that the evidence might have shown second degree. That would be up to your judgment.

THE COURT: As I recall the evidence is–evidence in the light most favorable to the State, which the Defendant denies, but is not negating the evidence except to the extent he's not the one that committed the crime.

MR. GURLEY: Right.

THE COURT: Is that a shooter came around behind the victim and the victim fell dead with crack cocaine apparently in his hand, nothing else being shown.

There were multiple shots, and the Medical Examiner, Examiner Dr. Butts indicated that most of the shots, if not all of the shots, were entry wounds in the back. No weapon being found on the ah–the victim. I mean to me it's either–I'll hear from you, but it looks like it's either first or nothing.

MS. BEDFORD: Okay. Your Honor, that sounds good.

MR. GURLEY: I ask the Court to consider to reconsider the motion, but yeah, I understand what the Court is thinking.

THE COURT: All right. First degree–guilty of first degree–by unanimous verdict guilty of first degree murder or not guilty.

Later, the following discussion occurred between the trial court and defense counsel:

THE COURT: ... And then my intention would be to give the substantive offense instruction, 206.13. It's titled first-degree murder where a deadly weapon is used not involving self-defense covering all lesser included homicide offenses. *Of course I will not be instructing as to any lessers*.

MR. GURLEY: Yes, sir.

(Emphasis added) The trial court did not charge on any lesser offenses to first-degree murder . . .

Assuming arguendo that defendant properly preserved this matter for appellate review, the trial court did not err in failing to instruct the jury on second-degree murder.

First-degree murder is an unlawful killing based upon premeditation and deliberation, whereas second-degree murder is an unlawful killing that lacks these elements. Our Supreme Court has held that:

> If the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree, including premeditation and deliberation, and there is no evidence to negate these elements other than defendant's denial that he committed the offense, the trial judge should properly exclude from jury consideration the possibility of a conviction of second degree murder.

16

State v. Locklear, 363 N.C. 438, 454-55, 681 S.E.2d 293, 306 (2009) (quoting State v. Strickland, 307 N.C. 274, 293, 298 S.E.2d 645, 658 (1983), overruled in part on other grounds by State v. Johnson, 317 N.C. 193, 203-04, 344 S.E.2d 775, 781-82 (1986)).

The State had the burden of presenting substantial evidence of premeditation and deliberation. Defendant contends that there was no direct evidence of intent to kill.

Our Supreme Court has held that "'specific intent to kill is a necessary element of first-degree murder' and proof of premeditation and deliberation is also proof of intent to kill." State v. Hamilton, 338 N.C. 193, 209, 449 S.E.2d 402, 411-12 (1994) (quoting State v. Holder, 331 N.C. 462, 474, 418 S.E.2d 197, 203 (1992)). In the absence of direct evidence, premeditation is generally proven by circumstantial evidence. See State v. Chapman, 359 N.C. 328, 374, 611 S.E.2d 794, 827 (2005) (holding that premeditation and deliberation are "generally proved by circumstantial evidence.").

At trial, the evidence presented by the State was that defendant drove from Goldsboro to Raynor's home, met with Raynor, concealed his vehicle nearby, returned to the Raynors' home, shot Raynor six times in the back while Raynor fled, ran away while Raynor lay dying, and then hid his motor vehicle. Our Supreme Court has held that the fact that a defendant drove a long way to the victim's house, that the victim was shot repeatedly in the back, and that the defendant left his victim to die, are all evidence of premeditation and deliberation. State v. Hunt, 330 N.C. 425, 428-29, 410 S.E.2d 478, 481 (1991); see also State v. Keel, 337 N.C. 469, 489, 447 S.E.2d 748, 759 (1994) (holding that evidence that a murder was committed in a particularly brutal fashion, as well as the number of the victim's wounds, supports a finding of premeditation and deliberation).

Defendant contends that there was evidence before the trial court to suggest a lack of premeditation and deliberation. Defendant contends on appeal that defendant was provoked, and that Raynor possessed drugs. We acknowledge that testimony was offered at trial that crack cocaine was found in Raynor's hand. However, any provocation by Raynor is completely speculative, and not supported by evidence. On appeal, it is the appellant who must point to some evidence in the record to support his argument. State v. Griffin, 5 N.C.App. 226, 227, 167 S.E.2d 824, 825 (1969).

For a jury to have found defendant guilty of second-degree murder while acquitting him of first-degree murder, there must have been some evidence in the record which might suggest a lack of premeditation or deliberation. All of the evidence tends to show that defendant had the intent to kill Raynor, along with premeditation and deliberation. Defendant does not point to any evidence to suggest that his conduct lacked premeditation or deliberation. We hold that the trial court's first-degree murder instruction was proper.

17

This argument is without merit.

Ingram, 227 N.C. App. at 386-389, 741 S.E.2d at 909-911 (emphasis in original).

A defendant is entitled to a lesser-included offense instruction as a matter of due process for capital cases. Beck v. Alabama, 447 U.S. 625, 638 (1980). However, the United States Supreme Court has never held that such an instruction is required in non-capital state trials. Id. at 638 n.14 (expressly reserving this issue); See Robinson v. North Carolina Att'y Gen., 2000 WL 1793060, 238 F.3d 414 (4th Cir. 2000) (finding that a decision in the petitioner's favor on lesser-included offense instruction in non-capital case would require enunciation and retroactive application of a new rule); Stewart v. Warden, 701 F. Supp. 2d 785, *7 (D.S.C. Mar. 29, 2010) ("[I]n the absence of any United States Supreme Court precedent holding that the failure to provide a lesser included offense instruction in non-capital cases implicates a federal right, it cannot be said that the state court violated clearly established federal law as decided by the Supreme Court of the United States."), appeal dismissed, 412 F. App'x 633 (Feb. 17, 2011); Leary v. Garraghty, 2001 WL 1265395, 115 F. Supp. 2d 568, 574 (E.D. Va.) (finding consideration of claim regarding lesser-included offense instruction in a non-capital is precluded by Teague), appeal dismissed, 21 F. App'x 149 (4th Cir. 2001), cert. denied, 535 U.S. 1024 (2002). Therefore, a decision on petitioner's claim would require the retroactive application of a rule that is not clearly established. The United States Supreme Court's ruling in Teague v. Lane, 489 U.S. 288, 316 (1989), bars the creation of new constitutional rules that must be applied retroactively. Jones v. North Carolina, No. 5:11-HC-2099-FL, 2012 WL 530011, at *7 (E.D.N.C. Feb. 17, 2012), appeal dismissed, , 474 F. App'x 196 (4th Cir. 2012).

Moreover, jury instructions are generally matters of state law and procedure not cognizable on federal habeas review. See Bates v. Lee, 308 F.3d 411, 420 (4th Cir. 2002). A federal habeas

court's review of allegedly erroneous jury instructions is limited to assessing whether the instruction "so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Cupp v. Naughten, 414 U.S. 141, 147 (1973) ("[T]he question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."). In addition, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp, 414 U.S. at 146–47. Moreover, the court of appeals' factual determinations are presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Taft, 738 S.E.2d at *2, 3. Petitioner has not presented evidence sufficient to rebut the presumption permitted the court of appeals' factual determinations or to establish that the failure of the trial judge to give the requested instruction rendered the entire trial fundamentally unfair.

For these reasons, petitioner has not demonstrated that the court of appeals' adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Accordingly, respondent's motion for summary judgment is GRANTED as to this claim.

   e.  Prosecutorial Misconduct

In his third ground for relief, petitioner alleges prosecutorial misconduct. Thus crux of this argument is that the prosecutor referred to and relied upon T.K.'s allegedly unreliable identification

during her opening and closing statements. (Pet. 18). This claim was denied by the MAR court both on its merits and as procedurally defaulted.

In order to establish a claim for prosecutorial misconduct, a petitioner must demonstrate: "(1) that the prosecutor's remarks and conduct were, in fact, improper and (2) that such remarks or conduct prejudiced the defendant to such an extent as to deprive the defendant of a fair trial." United States v. Allen, 491 F.3d 178, 191 (4th Cir. 2007) (citing United States v. Golding, 168 F.3d 700, 702 (4th Cir. 1999)). As noted above, despite petitioner's belief that T.K.'s testimony was unreliable, her testimony was subjected to cross-examination. Potential inconsistencies in T.K.'s testimony were, in fact, addressed during direct and cross-examination. (See, e.g., (Resp't. Ex. 18 (DE 9-18) at 76-77). T.K. testified she answered direct and cross examination questions honestly, and that she was not coached to provided specific answers by the prosecutor. (Id.). Her identification of petitioner was ultimately deemed credible by a jury. It was not prosecutorial misconduct for the prosecutor to refer to rely upon T.K.'s testimony during open and closing statements.

In sum, petitioner's third ground for relief is time-barred, procedurally defaulted, and substantively without merit. For these reasons, petitioner has not demonstrated that the MAR court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the MAR court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Accordingly, respondent's motion for summary judgment is GRANTED as to this claim.

f. Ineffective Assistance of Trial Counsel

In his fourth ground for relief, petitioner contends he received ineffective assistance from his trial counsel. This claim was denied by the MAR court both on its merits and as procedurally defaulted. Specifically, the MAR determined :

> 1. Upon a previous appeal, the Defendant was in a position to adequately raise grounds and issues underlying the present motion and is therefore procedurally barred pursuant to N.C.G.S. § 15A-1419.
>
> 2. The Court further finds, upon its review of the file and its contents and the allegations of the Defendant, that the Defendant does not set forth grounds upon which relief can be granted in accordance with the General Statutes of the State of North Carolina The blanket allegations of ineffective counsel are not supported by credible.

(Resp't Ex. 11 (DE 9-11) at 2-3).

The Sixth Amendment right to counsel includes the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish a two-prong test. First, a petitioner must show that the counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time. Id. This court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Petitioner must overcome "a strong presumption that counsel's representation was within the wide range of reasonable professional assistance" and establish "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed [him] by the Sixth Amendment." Id.; Harrington v. Richter, 562 U.S. 86, 88 (2011); see Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008). For the second prong, petitioner must show there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. Strickland, 466 U.S.

at 694. Even then, however, habeas relief may be granted under <u>Strickland</u> only if the "result of the proceeding was fundamentally unfair or unreliable." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993); <u>Sexton v. French</u>, 163 F.3d 874, 882 (1998).

Ineffective assistance of counsel claims are extremely difficult to establish in the context of a section 2254 petition. Specifically, the Supreme Court has stated that, "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential . . . and when the two apply in tandem, review is doubly so." <u>Harrington</u>, 562 U.S. at 105 (quotation and citation omitted).

Petitioner does not provide insufficient factual or evidentiary support for his remaining ineffective assistance of counsel claims.[4] <u>See</u> <u>Nickerson</u>, 971 F.2d at 1136 ("In order to obtain an evidentiary hearing on an ineffective assistance claim-or for that matter on any claim-a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."); <u>Bradford v. Whitley</u>, 953 F.2d 1008, 1012 (5th Cir. 1992) (stating ineffective assistance of counsel claims that are based on speculation do not meet the burden of showing prejudice under <u>Strickland</u>); <u>see also</u> <u>Bruce v. Robinson</u>, Civil Action No. 9:09-1383-PMD-BM, 2010 WL 4318871, at *8 (D.S.C. July 22, 2010) (stating a habeas petitioner's speculation, without evidence, that the outcome of his trial would have been different absent counsel's purported deficiencies, does not satisfy the prejudice prong of <u>Strickland</u>), <u>appeal dismissed</u>, 418 F. App'x 202 (4th Cir. 2011).

---

[4] Petitioner relies extensively on a draft affidavit prepared by Lauren Miller, the NCPLS attorney examining his case. (<u>See</u> Pet'r Ex. (DE 18) at 16). Ms. Miller prepared this affidavit before completing her investigation, and petitioner made significant handwritten edits to this affidavit. (<u>Id.</u>). Ultimately, Ms. Miller declined to represent petitioner upon completing her investigation.

In sum, petitioner's ineffective assistance of counsel claims are time-barred, procedurally defaulted, and substantively without merit. For these reasons, petitioner has not demonstrated that the MAR court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the MAR court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Accordingly, respondent's motion for summary judgment is GRANTED as to this claim.

g.     Ineffective Assistance of Appellate Counsel

In his fifth and final ground for relief, petitioner contends that he received ineffective assistance from his appellate counsel (Pet. 20). The MAR court dismissed this claim on the merits. (Resp't. Ex. 11 (DE 9-11)).

To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that counsel's representation was objectively unreasonable and that a reasonable probability exists that, but for the attorney's error, he would have prevailed on his appeal. Smith v. Robbins, 528 U.S. 259, 285 (2000) (citing Strickland, 466 U.S. at 687–88). Appellate counsel is not required to assert all non-frivolous issues on appeal, "but rather may select from among them in order to maximize the likelihood of success on appeal." Smith, 528 U.S. at 288. Reviewing courts must presume that in determining which issues to appeal, appellate counsel selected those issues most likely to afford relief. Pruett v. Thompson, 996 F.2d 1560, 2568 (4th Cir. 1993).

Petitioner's claim largely relates to petitioner's previously discussed meritless claims. Appellate counsel cannot be deemed ineffective for failing to raise meritless claims. Moreover,

appellate counsel may not be faulted for strategic or tactical decisions with respect to which issues to pursue on appeal. <u>Strickland</u>, 466 U.S. at 681. Based upon the foregoing, petitioner has not demonstrated that his appellate counsel's representation was objectively unreasonable. Petitioner, additionally, has not presented evidence to establish that a reasonable probability exists that, but for the attorney's error, he would have prevailed on his appeal.

Therefore, the MAR court's decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the MAR court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. <u>See</u> 28 U.S.C. § 2254(d)-(e). Thus, respondent's motion for summary judgment as to this claim is GRANTED.

B.      Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the

issue is adequate to deserve encouragement to proceed further. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate <u>both</u> "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" <u>Rose v. Lee</u>, 252 F.3d 676, 684 (4th Cir. 2001) (quoting <u>Slack</u>, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." <u>Slack</u>, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## CONCLUSION

For the foregoing reasons, respondent's motion for summary judgment (DE 7) and motion to dismiss (DE 11) are GRANTED and petitioner's § 2254 petition is DISMISSED. A certificate of appealability is denied, the clerk of court is DIRECTED to close this case.

SO ORDERED, this the 13th day of March, 2017.

LOUISE W. FLANAGAN
United States District Judge

25